# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Michael O. Ware**
T: +1 212 506 2593
F: +1 212 849 5593
MWare@mayerbrown.com

April 8, 2021

BY ECF

Hon. P. Kevin Castel
United States District Judge
500 Pearl St.
New York, N.Y. 10007


Re:    Ex parte Application of Klein
       20 Misc. 203 (PKC)


Dear Judge Castel:

This is a Pre-Motion Letter under paragraph 3.A of Your Honor's Individual Practices on a motion to vacate the § 1782 orders in this case, to quash subpoenas issued under those orders and to dismiss the proceeding (and if necessary to intervene).  The movants are Gertrudes Benedek ("Gertrudes") and three of her adult children, Alexandre R. Benedek, Vivian Noemy Benedek Moas and Evelyn Benedek (together the "Gertrudes Group").  The four members of the Gertrudes Group are the defendants in a Brazilian lawsuit, called an *Ação de Sonegados*, filed by the Applicants herein, Sylvia Benedek Klein and Eliane Benedek Segal.  The Applicants are also adult daughters of Gertrudes.  No conferences before the Court are presently scheduled.

Applicants say that their § 1782 "request stems from a dispute among family members over the estate of Applicants' father, Emanuel Benedek ('Emanuel')."  Let. Mot. by E. Martin de Luca, at 2, Jan. 14, 2021 (ECF No. 15, the "January Letter Motion").  That's not exactly right.  Brazilian law requires that a portion of a decedent's Brazilian estate be allocated equally among the decedent's children.  There's no dispute, therefore, over how Emanuel's Brazilian Estate is to be allocated.  On the contrary, it is common ground that, as a net result of Emanuel's Will and Brazilian law of general application, 50% of the Estate goes to his surviving spouse, Gertrudes, and the remaining 50% is to be shared equally by his six children.  *Accord* Fraga Decl. ¶¶ 29-30, Apr. 30, 2020 (not yet on ECF).  Applicants' grievance is not on how the Brazilian Estate is to be allocated, but on the fact it's smaller than Applicants would like.

The Applicants do not allege that Emanuel was impaired or that anyone exercised undue influence over him.  On the contrary, they explain in detail why his Brazilian Estate is modest in size given his enormously successful career in business and investing.  Emanuel implemented what in this Court the Applicants aptly dub "Emanuel's Wealth Preservation Plan."  Mem. of Law in Sup. of Ex Parte App., Apr. 30, 2020 (not yet on ECF), at 6-11.  Applicants don't necessarily have every detail right, but the bottom line is not in dispute.  Emanuel died with a modest probate estate because that's exactly what he wanted and he made it so.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP

Hon. P. Kevin Castel
April 8, 2021
Page 2

In May 2020, Applicants obtained from the judge in Part I a sealing order under which Applicants conducted months of discovery without notice to the Brazilian court or to their adversaries in that court, the Gertrudes Group.  In January 2021, they came back to the Court seeking an additional order under § 1782 and leave to prosecute subpoenas under that order, again without notice to the Gertrudes Group.  On February 17, 2021, the Court entered a public order (the "February Order," ECF 13).  The February Order granted the second § 1782 application, but denied Applicants' "extraordinary" request to continue to operate in secret and even to gag the witnesses.  (The January Letter Motion, at 11-12, elides sealing a court file from the public with conducting § 1782 discovery without notice to the applicant's adversaries in foreign civil litigation, suggesting the latter is routine.  On the contrary, it would to our knowledge be unprecedented, and none of the cases Applicants cite did any such thing.)

In response to the February Order, the Clerk entered on the public docket at least most of the papers applicants filed in January 2021.  The papers on the initial § 1782 application are dated April 30, 2020, and were apparently filed in early May 2020.  The 2020 papers have yet to be entered on the public docket.  Last week we obtained copies of the April 2020 papers (and of the two orders made in Part I on May 5, 2020) from Applicants' attorneys at Kobre & Kim.  In an endorsement yesterday, ECF No. 32, the Court directed the Clerk to complete the unsealing process.

Applicants waited 23 days from entry of the February order before serving the witnesses with subpoenas on March 12 and providing email notice to the Gertrudes Group.

Applicants' April 2020 papers make up a substantial bundle:  a 30-page brief, a 15-page declaration by the Applicants' Brazilian lawyer and nearly 600 pages of documentary evidence. The January 2021 papers – the 13-page single-spaced January Letter Motion, supported by several declarations – extensively incorporate the April 2020 papers, and so it is only in recent days that we have started to understand Applicants' case.  We have a lot of study ahead of ourselves, but it is already clear that the § 1782 orders were improvidently granted on a distorted record.

Applicants' papers carefully cultivate the false impression that the *Ação de Sonegados* proceeding they filed in March 2020 is the entire relevant litigation history.  On the contrary, litigation has been underway since 2016.  Not every appeal has been resolved, but the Applicants have lost at every stage in Brazil.  We have yet to get the rulings translated, but in broad strokes the Brazilian courts have rebuffed all of Applicants' theories about why property titled in other names should be considered part of Emanuel's Brazilian probate Estate.  What Judge Cote said in *In re WinNet R CJSC*, No. 16 Misc. 484 (DLC), 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017), could be said here with only minor changes as to details:

> WinNet was not candid when it made its *ex parte* application to our court's Part I Judge.  It did not adequately inform the court of adverse rulings that significantly undermined its application.  WinNet explained that it sought the § 1782 discovery to pursue its theory in Russian proceedings that there had been an unlawful

Hon. P. Kevin Castel
April 8, 2021
Page 3

> reorganization scheme to deprive WinNet of the fruits of its leases.  WinNet did
> not forthrightly explain, however, the extent to which Russian courts had
> repeatedly rejected its attacks on the corporate restructuring of Femida and
> Femida Real Estate.  As described above, it included only cursory references to
> the relevant litigation in Russia regarding the reorganization, and in those cursory
> references WinNet did not frankly or fully describe the adverse Russian rulings.
> A full and fair description of the pertinent litigation may very well have led the
> court to deny the application.  At the very least, it is difficult to draw any
> conclusion but that WinNet feared that a candid description of the litigation would
> have undermined if not defeated its application

Three mandatory factors must be established by the § 1782 applicant:  "(1) the person from whom discovery is sought resides (or is found) in the district …, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir.2012)..  Our challenge will focus on the second:  the "for use" requirement.

The Applicants' subpoenas seek the financial records of dozens of persons over many years from eight U.S. financial institutions.  One thing ties together whatever assets those institutions hold or held in the past:  they are not in Brazil.  For that reason, evidence concerning those assets is simply not "for use" in the Brazilian proceeding.

In the estate context, an *Ação de Sonegados* seeks to bring into a Brazilian estate Brazilian assets of the decedent, thus increasing the heirs' allocable shares.  Our expert evidence on Brazilian law will demonstrate that the Brazilian probate courts refuse to exercise jurisdiction over assets not located in Brazil – and notably the Applicants do not appear to argue otherwise.  They contend instead that the obligation of heirs and others to disclose the decedent's assets to the probate court "includes any assets located abroad, as foreign assets must be disclosed by the heirs to the probate court, which will then consider their value in order to calculate the distributions of the assets in Brazil."  Fraga Decl. ¶¶ 38, Apr. 30, 2020 (not yet on ECF).  This is plainly contrary to Brazilian law as explained by the scholar André de Carvalho Ramos, in an article whose title translates to "The Private International Law of Succession in Brazil":

> With regard to the scope of the Brazilian jurisdiction over the totality of the
> deceased's assets (and not only over the assets located in the national territory),
> several Brazilian court precedents (which we will see below) recognize that the
> rule to establish the sole Brazilian jurisdiction for international and civil matters,
> *a contrario sensu*, does not allow a Brazilian court to rule a probate proceeding on
> the deceased's assets located abroad.  Consequently, regarding the computation of
> assets located abroad to enforce the obligation of an equality division of the assets
> inherited by heirs set forth in the Brazilian Succession Law, the Brazilian
> Supreme Court gave another interpretation to the Brazilian's jurisdiction
> monopoly (which is not related to the applicable law), ruling that assets located

Mayer Brown LLP

Hon. P. Kevin Castel
April 8, 2021
Page 4

> abroad cannot be considered in the sharing.  Even if the Succession Law establishes the equality of the quota of the inheritance of heirs, this equality will be required only with respect to assets located in Brazil, changing the "unity of the succession" that might be inferred from [other law].[1]

Of the discretionary *Intel* factors, our motion will focus on policy-circumvention, relevance and intrusiveness.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  As we understand things (and again only a fraction of the massive Brazilian record has been translated), the Brazilian courts have repeatedly rebuffed requests very much like those made here for information from financial institutions inside and outside Brazil.  And given that the Brazilian litigation has no interest in assets outside Brazil, the proposed intrusion into the financial affairs of dozens of individuals and companies is entirely unjustified.

In view of the enormous job ahead of us and the massive Brazilian record we must learn and perhaps translate for this Court, we request a May 21, 2021 deadline for the submission of our motion papers, with whatever reasonable period Applicants may request for answering papers.  We request an interval of at least four weeks for reply papers given the likelihood that we will have to deal with Brazilian legal questions and Portuguese-language materials.

We thank the Court for its consideration.

Respectfully submitted,

/s/ Michael O. Ware

Michael O. Ware

cc by email:

E. Martin de Luca, Esq.
Scott C. Nielson, Esq.
(Kobre & Kim São Paulo)

---

[1]    Free translation by Mayer Brown Brazil from RAMOS, André de Carvalho. *O direito internacional privado das sucessões no Brasil*. Revista de la secretaría del Tribunal permanente de revisión, Asunción, v. 4, n. 7, p. 307-325, 2016. DOI: 10.16890/rstpr.a4.n7.p307.