UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

IN RE EX PARTE APPLICATION OF SYLVIA
BENEDEK KLEIN AND ELIANE BENEDEK
SEGAL
---------------------------------------------------------x

20-mc-203 (PKC)

OPINION AND ORDER

CASTEL, U.S.D.J.

This an application to quash or vacate certain subpoenas in aid of foreign

proceedings that the Court previously authorized under 28 U.S.C. § 1782.  The subpoenas relate

to an intra-family dispute that has been playing out in the courts of Brazil since the death of

Emanuel Benedek in September 2015.  Emanuel built a significant fortune in the leather and fur

industries and later acquired extensive real estate holdings.  Two of Emanuel's daughters, Sylvia

Benedek Klein and Eliane Benedek Segal, have brought a series of legal proceedings in Brazil,

asserting that other family members transferred and concealed assets that should properly be

considered property of Emanuel's estate.[1]  Most recently, in March 2020, Sylvia and Eliane

commenced a proceeding known as an "Ação de Sonegados" (the "Ação"), which is roughly

translated as "Suit for Concealment of Assets."  (See Docket # 41-5.)  The defendants in the

Ação are their mother, Gertrudes Benedek, and Gertrudes's three adult children: Alexandre R.

Benedek, Vivian Noemy Benedek Moas and Evelyn Benedek Shtibelman (collectively, the

"Gertrudes Group").  The 129-paragraph, 32-page, single-spaced pleading in the Ação asserts

that those defendants willfully concealed property that should properly be included in Emanuel's

estate.  Probate proceedings for the estate are ongoing, and prior to bringing the Ação, Sylvia and

Eliane commenced a pair of actions seeking to pierce the veils of corporations that they claim

contain estate assets.  These two actions were dismissed and are under appeal.

---

[1] The Court will generally reference the members of the Benedek family by their first names.

Sylvia and Eliane applied to this Court pursuant to section 1782 for discovery in aid of the Ação, specifically requesting document subpoenas to eight United States financial institutions covering the information of twenty-two individuals or entities.  (Docket # 15.)  The application was brought ex parte and under seal, and also requested a "gagging order" that would have forbidden the financial institutions from disclosing the subpoenas' existence.  (Id.)  The Court granted the section 1782 application, ordered that the docket be unsealed, and directed the applicants to serve the subpoenas and the Court's Order upon the defendants in the Brazilian proceeding – i.e., the Gertrudes Group.  (Docket # 13.)

The Gertrudes Group now moves to intervene in this proceeding, quash the subpoenas, vacate the order granting section 1782 discovery, sequester any documents produced by any witness, and dismiss the proceeding.  (Docket # 52.)  For the reasons that will be explained, the motion to intervene will be granted.  The subpoenas issued to respondents Charles Schwab & Co., Inc. ("Schwab"), Raymond James Financial Services, Inc. ("Raymond James") and Sun Life Financial (U.S.) Services Company, Inc. ("Sun Life") will be quashed because the applicants have not demonstrated that they are "found" in this district for the purpose of the section 1782 application.  The applicants have otherwise satisfied the mandatory and discretionary factors of section 1782, except that the document demands incorporated into the subpoenas are overbroad and unduly burdensome.  The applicants may submit revised, proposed document demands within 14 days.

BACKGROUND

On May 5, 2020, the judge sitting in Part I granted Sylvia and Eliane's sealed, ex parte section 1782 application to take discovery of The Clearing House Payments Company L.L.C. ("CHIPS") and The Federal Reserve Bank of New York (the "Fed-NY").

Based on the materials received in response, on January 14, 2021, the applicants brought a sealed, ex parte application for the issuance of eight additional subpoenas.  (Docket # 15.)  Two of those subpoenas sought further discovery from CHIPS and the Fed-NY, and the other six subpoenas sought discovery from Schwab, Citibank, N.A. ("Citibank"), Morgan Stanley & Co. LLC ("Morgan Stanley"), Raymond James, Sun Life and Bank Leumi USA ("Bank Leumi").  The document demands annexed to the subpoenas seek materials related to twenty-two individuals and entities, including the individuals in the Gertrudes Group.  They seek broad categories of information relating to those individuals and entities, such as "all" documents and communications relating to payments made or received them, "[a]ll Documents containing information regarding [their] assets, . . . wages, insurance policies [or] addresses . . .", and the "particulars of any funds" held on their behalves.  (See, e.g., Docket # 65-4.)

On March 3, 2020, the applicants commenced the Ação in Brazil against the members of the Gertrudes Group.  (Fraga Supp. Dec. ¶ 4 (Docket # 22).)  As described by Brazilian counsel to the Gertrudes Group, an Ação "is a proceeding to identify and to bring into the Brazilian probate estate assets of the decedent the administrator and the heirs had not previously disclosed in inventory proceedings."  (Cigagna Dec. ¶ 28 (Docket # 53.).)  In this proceeding, Sylvia and Eliane have claimed "an imminent risk" that Gertrudes and others might divert or dissipate assets belonging to the estate of Emanuel by transferring them out of Brazil.  (Klein Dec. ¶ 4 (Docket # 21); see also Fraga Supp. Dec. ¶¶ 6, 9-15.)  In a written decision of March 4, 2020, the court presiding over the Ação rejected various emergency applications brought by Sylvia and Eliane, including applications to impose daily fines on the defendants and the managers of various companies, to remove and replace the companies' management, and to

freeze company assets.  (Cigagna Dec. Ex. F.)  The court also denied certain emergency discovery requests.  (Id.)

The Ação is the latest in a series of legal proceedings related to the assets of Emanuel's estate.  Since May 2016, a probate proceeding has been underway in the Fifth Family and Probate Court of the Central District of São Paolo, the purpose of which is to make an inventory of the assets in Emanuel's estate.  (1st Fraga Dec. ¶ 31 (Docket # 49); Cigagna Dec. ¶¶ 9-10.)  Following an unsuccessful application in that probate proceeding, Sylvia and Eliane brought a separate action in 2018 seeking declaratory judgment as to a veil-piercing theory about the alleged concealment of estate assets in a corporation called Zidane.  (Cigagna Dec. ¶¶ 14-18.)  The Brazilian court dismissed the claim and denied applicants' discovery request.  (Cigagna Dec. ¶ 18.)  Also in 2018, Sylvia and Eliane brought a similar veil-piercing proceeding directed to a corporation called Sestini.  (Cigagna Dec. ¶ 19.)  Again, their claim was dismissed and their request for discovery was denied.  (Cigagna Dec. ¶¶ 25-26.)

DISCUSSION.

I.       The Motion to Intervene Is Granted.

In a section 1782 proceeding, "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties."  Application of Sarrio, S.A., 119 F.3d 143, 148 (2d Cir. 1997).  The individuals comprising the Gertrudes Group are all defendants in the Ação proceeding in Brazil and the application seeks discovery of their records held by third-party financial institutions.  The applicants do not oppose the motion to intervene.  Because the members of the Gertrudes Group have an interest in the property or transaction that is subject to this proceeding and its outcome

may impair or impede that interest, their motion to intervene is granted.  See Rule 24(a)(2), Fed.
R. Civ. P.

II.     The Mandatory and Discretionary Factors of 28 U.S.C. § 1782.

A district court may, "upon the application of any interested person," order a
person within its jurisdiction to "give his testimony or statement or to produce a document or
other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C.
§ 1782(a).  To grant a section 1782 application, the Court must be satisfied that three mandatory
factors are met: "'(1) the person from whom discovery is sought resides (or is found) in the
district of the district court to which the application is made, (2) the discovery is for use in a
foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by
a foreign or international tribunal or any interested person.'"  Mees v. Buiter, 793 F.3d 291, 297
(2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d
Cir. 2012)); accord In re Accent Delight Int'l Ltd., 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs four
discretionary factors listed in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65
(2004).  "These are: (1) whether 'the person from whom discovery is sought is a participant in
the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent';
(2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the
receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial
assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-
gathering restrictions or other policies of a foreign country or the United States'; and (4) whether
the request is 'unduly intrusive or burdensome.'"  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S.
at 264-65).  The Court's exercise of discretion "'is not boundless,'" and must be guided by the

goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Mees, 793 F.3d at 297-98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004)).

### III.    The Applicants Have Not Demonstrated that Schwab, Raymond James or Sun Life Are "Found" in This District.

The Gertrudes Group urges that the subpoenas against Schwab, Raymond James and Sun Life should be quashed because they are not "found" in this district.  In applying section 1782(a), "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process."  In re del Valle Ruiz, 939 F.3d 520, 527 (2d Cir. 2019).  The applicants do not urge that Schwab, Raymond James or Sun Life are subject to general jurisdiction in this district.  Instead, they point to the Supreme Court's contacts analysis in Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017 (2021), and assert that the business activities conducted by Schwab, Raymond James and Sun Life demonstrate that this Court has specific jurisdiction over them for the purpose of this application.

To exercise specific jurisdiction over an entity not systematically and continuously present in the district, "'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"  In re del Valle Ruiz, 939 F.3d at 529 (quoting Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 137 S. Ct. 1773, 1780 (2017)).  "In the liability context, '[t]he exercise of specific jurisdiction depends on in-state activity that gave rise to the episode-in-suit.'"  Id. at 530 (quoting Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016) (emphasis in original)).  In the context of a section 1782 application, the due process analysis looks to the relationship between the respondent's forum contacts and the discovery sought:

> Translated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.

Id.  Although "the use of terminology relating to causation is a somewhat awkward fit for discovery . . . the focus on the relationship between a § 1782 respondent's forum contacts and the resulting availability of the evidence is a workable translation of the normal personal-jurisdiction framework. For instance, an applicant could target its discovery to all documents relating to *x* created during the course of respondent's engagement with forum entity *y*. That our holding will generally require a § 1782 applicant to provide additional specificity concerning the discovery it seeks is a feature, not a flaw." Id. at 530 n.12. "[I]t [is] enough for purposes of due process in these circumstances that the nonparty's contacts with the forum go to the actual discovery sought rather than the underlying cause of action." Id. at 530.

In del Valle Ruiz, the Second Circuit concluded that the respondent's forum contacts were insufficient for the exercise of jurisdiction consistent with due process. Id. at 531. The respondent, Banco Santander S.A. ("Santander"), had used two New York City firms, UBS and Citibank, to conduct due diligence on the potential acquisition of a Spanish bank, BPE. Id. at 524. Before Santander made an offer, BPE "suffered an all-out run on deposits" and conducted a government-forced sale. Id. Santander then acquired BPE for €1, and its CEO stated that it had been able to do so only because it previously conducted due diligence. Id. at 524-25. A group of investors in BPE brought legal proceedings in the European Union and Spain directed to the forced sale and filed a section 1782 application in New York seeking

discovery of Santander.  Id. at 525.  The Second Circuit concluded that Santander's pre-

acquisition due diligence was insufficient to exercise specific jurisdiction over the application

because the diligence "only" related to the acquisition of BPE prior to the forced sale.  Id. at 531.

The applicants' legal claims "and likewise the bulk of discovery sight" arose from the forced sale

of BPE, which was a separate transaction.  Id.  Thus, because Santander's in-forum retention of

UBS and Citibank were not connected to BPE's forced sale, they were not "the primary or

proximate reason that the evidence sought is available at all."  Id. at 530-31.  Similarly,

Santander's forum contacts that postdated the BPE acquisition could not constitute "even but-for

'causes' of the availability of the evidence sough in discovery."  Id. at 531.

         The applicants urge that the reasoning of del Valle Ruiz was modified, if not

implicitly abrogated, by the Supreme Court's decision in Ford Motor Company.  In Ford Motor

Company, Ford urged that it was not subject to personal jurisdiction in products liability lawsuits

brought in Minnesota and Montana because it had not designed, manufactured or sold the two

allegedly defective vehicles in those states.  141 S. Ct. at 1023.  The Supreme Court rejected this

argument, noting that it previously "has stated that specific jurisdiction attaches in cases identical

to the ones here – when a company like Ford serves a market for a product in the forum State and

the product malfunctions there."  Id. at 1027 (citing World-Wide Volkswagen Corp. v. Woodson,

444 U.S. 286, 295 (1980)).  Ford Motor Company noted that in these circumstances, there does

not necessarily need to be a causal connection between the defendant's forum contacts and the

plaintiff's cause of action, provided that the contacts "relate to" the relief sought.  See id. at

1024-25.  "That does not mean anything goes.  In the sphere of specific jurisdiction, the phrase

'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum.

But again, we have never framed the specific jurisdiction inquiry as always requiring proof of

causation – i.e., proof that the plaintiff 's claim came about because of the defendant's in-state

conduct." Id. at 1026.  The Supreme Court noted Ford's heavy advertising directed to the two

forum states, its widespread dealer networks in those states, and its post-warranty programs to

maintain and repair Ford vehicles in those states.  Id. at 1028.  "In conducting so much business

in Montana and Minnesota, Ford 'enjoys the benefits and protection of [their] laws' – the

enforcement of contracts, the defense of property, the resulting formation of effective

markets.  All that assistance to Ford's in-state business creates reciprocal obligations – most

relevant here, that the car models Ford so extensively markets in Montana and Minnesota be safe

for their citizens to use there."  Id. at 1029-30 (quoting Int'l Shoe Co. v. State of Washington,

326 U.S. 310, 319 (1945)).

The applicants urge that the forum contacts of Schwab, Raymond James and Sun

Life are sufficient to confer specific jurisdiction over the subpoena application.  A declaration

submitted by applicants' attorney E. Martin DeLuca states only that "[t]o the best of my

knowledge," this Court has jurisdiction over all subpoena respondents.[2]  (Second DeLuca Dec.

(Docket # 23) ¶ 5.)  DeLuca states that Schwab maintains an office in this district on Wall Street

in Manhattan.  (Id.)  He further states that Raymond James has a "branch" on Fifth Avenue in

Manhattan and that Sun Life "conducts business" in New York and is traded on the New York

Stock Exchange.  (Id.)

DeLuca's declaration annexes exhibits to demonstrate the forum contacts of

Schwab, Raymond James and Sun Life, describing them as "Company Investigation Reports"

obtained from Westlaw.  (Deluca Dec. ¶¶ 19-21 & Exs. N, O, P (Docket #23-14-16).)  These

exhibits do not demonstrate meaningful forum contacts with this district and the applicants have

---

[2] It is undisputed that all other respondents maintain their principal places of business in this district and are therefore "found" in the district.

made no effort to explain how their contents relate to this application.  Each exhibit contains a

Google Maps screenshot purporting to reflect the location of a Manhattan office, followed by

several pages that recite information such as the co-tenants in their commercial buildings, press

reports about the companies, and their nationwide litigation histories.  The exhibit pertaining to

Sun Life identifies the phone number of its New York office as "(212) 000-1111," has a table

listing thirty press reports apparently relating to Sun Life in some way (e.g., "Bright Women,

Bright Minds, Bright Communities," published in Market News Publishing Canada on December

1, 2020), followed by a table that appears to list 100 orders or proceedings from jurisdictions

around the country in which Sun Life was a party.  (De Luca Dec. Ex. P.)  The exhibit pertaining

to Raymond James is similar, except that it appears to reflect an operable phone number and also

lists 100 businesses and ten individuals that have a business address at 630 Fifth Avenue, where

Raymond James purportedly maintains a Manhattan office.  (De Luca Dec. Ex. O.)  The exhibit

relating to Schwab lists office phone numbers with area codes from around the United States,

lists the names of two New York employees, and contains a table titled "Associate Analytics

Chart," consisting of names and addresses of seventeen businesses and individuals, including an

apparent medical clinic on East 13th Street and natural persons with addresses in Florida,

Massachusetts and Nevada.  (De Luca Dec. Ex. N.)  The applicants also have submitted

registrations with the New York Department of State, Division of Corporations, which identify

Schwab and Sun Life as foreign business corporations active in New York.  (De Luca Dec. Exs.

J, M.)

        The applicants have not demonstrated that Schwab, Raymond James or Sun Life

are "found" in this district for the purposes of their application.  First, the Court is unaware of

any authority in the Second Circuit that has revisited del Valle Ruiz since Ford Motor Company

issued.  del Valle Ruiz was tailored to the forum contacts required to exercise specific

jurisdiction over a section 1782 application, which involves different considerations than the

products liability claims at issue in Ford Motor Company.  del Valle Ruiz continues to govern

the analysis of specific jurisdiction over a section 1782 application in the Second Circuit.

Applying del Valle Ruiz, the applicants have not explained how the forum contacts of Schwab,

Raymond James or Sun Life are either a but-for or proximate cause of the materials that they

seek.  See 939 F.3d at 930.  For example, there is no suggestion that Sun Life's forum contacts

have a causal relationship to any documents or communications about a payment from Sun Life

Financial (Bermuda) to Gertrudes in the amount of $2,556,015.27 on November 16, 2015.[3]  (See

Docket # 65-7.)  Similarly, there is no suggestion of a causal relationship between the forum

contacts of Schwab, Raymond James or Sun Life and the existence of any documents or

communications "regarding assets, funds, indebtedness, bonds, property deeds or titles, wages,

insurance policies, addresses, asset sales, as well as any other property reported" as belonging to

the twenty-two individuals and entities listed in the subpoenas, many if not all of whom appear

to be based in Brazil.  (Docket # 65-3, -6, -7.)

Even assuming that Ford Motor Company modifies the analysis of del Valle Ruiz,

the applicants have not made a showing that the forum contacts of Schwab, Raymond James or

Sun Life have either a causal relationship or "relate to" the application.  The applicants have

submitted a scattered and irrelevant collection of information about the three companies as a

whole, and not their forum contacts in this district.  The forum contacts identified by the

applicants fall short of the "veritable truckload of contacts with Montana and Minnesota"

described in Ford Motor Company.  141 S. Ct. at 1031.  At most, the applicants' submissions

---

[3] Indeed, it is not even apparent that the Sun Life Financial (Bermuda) named in the document request is the same entity as respondent Sun Life Financial (U.S.) Services Company, Inc.

suggest that the three companies have rented office space in Manhattan.  Applicants have made no showing about the types of services they provide in this district, their marketing activities, or other indicia of purposeful availment that would give them clear notice that they could be required to respond to the applicants' subpoenas.

The Court therefore concludes that the applicants have not demonstrated that Schwab, Raymond James or Sun Life are "found in" this district.  The motion to quash will be granted as to the subpoenas issued to Schwab, Raymond James and Sun Life.

IV.    The Applicants Have Demonstrated that the Discovery They Seek Is "For Use in a Proceeding."

With the Schwab, Raymond James and Sun Life subpoenas quashed, there remain the subpoenas issued to the five other financial institutions.  The Gertrudes Group urges that the motion to quash should be granted because the applicants have not demonstrated that the evidence sought is "for use" in a foreign proceeding.  According to the Gertrudes Group, the proceedings in Brazil are directed toward decades-old transactions, whereas the applicants seek information about transactions that took place in recent years.  The Gertrudes Group also asserts that the court presiding over the Ação will only consider assets located in Brazil and that the tribunal treats overseas assets as being beyond its jurisdiction.

"The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail."  Mees, 793 F.3d at 298.  In deciding whether the materials are "for use," courts should "approach[ ] the issue according to the particular facts of each case and the arguments presented" and "focus[ ] on the practical ability of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal."  In re Accent Delight, 869 F.3d at 131 (emphasis in original).  "[I]n the typical § 1782

application, the applicant has already initiated a foreign proceeding and seeks discovery entirely

to help her prove her claims . . . ."  Mees, 793 F.3d at 299.  A court should not consider whether

the materials sought are either discoverable or admissible in the underlying proceeding, because

such considerations will involve "technical questions of foreign law . . . ."  Brandi-Dohrn, 673

F.3d at 81 (quotation marks omitted).  The materials sought can be "for use" in a foreign

proceeding if the tribunal "could hear new evidence – regardless of how narrow those

circumstances might be."  Id. at 83.

> The parties have made voluminous submissions about Brazil's legal processes and
the litigation history of the members of the Benedek family.  For this application, it is most
relevant that applicants Sylvia and Eliane commenced the Ação in the Fifth Family and Probate
Court of the Central District of São Paulo on March 3, 2020, naming the members of the
Gertrudes Group as defendants.  (Fraga Dec. ¶ 37 (Docket # 49); De Luca Supp. Dec. (Docket #
24) ¶ 3.)  The pleading in the Ação alleged that in the ongoing probate proceeding, the
defendants concealed or failed to disclose the full extent of assets in Emanuel's estate.  (Fraga
Dec. ¶ 37; Docket # 41-5.)  According to Luiz Fernando Fraga, who is the applicants' counsel in
Brazil, Brazilian law requires participants in a probate proceeding to disclose the estate's assets
to the best of his or her knowledge, including any assets located abroad.  (Fraga Dec. ¶ 38.)
Fraga asserts that the defendants in the Ação knowingly failed to inform the probate court about
the existence of certain assets, and that applicants have petitioned the Brazilian court for an order
penalizing them for non-disclosure.  (Fraga Dec. ¶¶ 40-41.)  Fraga asserts that this application
seeks evidence that defendants transferred to foreign bank accounts funds belonging to
Emanuel's estate.  (Fraga Supp. Dec. ¶¶ 9-10 (Docket # 22).)

In their memorandum, the Gertrudes Group describes the Ação as a likely-futile attack on the ongoing administration of Emanuel's estate, which follows the applicants' unsuccessful attempts to pierce the veils of three Brazilian companies that they urge should be considered part of Emanuel's estate.  (Gertrudes Mem. at 5-9.)  Early in the Ação proceeding, the Brazilian court denied applications to replace the management of these three companies and place certain assets in escrow.  (Cigagna Dec. Ex. F.)  The Gertrudes Group also has submitted the declaration of Nelson Nery Junior, a law professor at the Pontificia Universidade Catolica in São Paulo and a practicing litigator in Brazil.  (Docket # 56.)  Nery purports to offer "[a] thorough hermeneutic work . . . considering several rules of law, opinions of respected scholars and precedents of Brazilian jurisprudence" to support his ultimate conclusion that Brazilian courts do not have jurisdiction over disputes concerning assets located abroad.  (Nery Dec. at 10-22.)  He also asserts that an Ação de Sonegados proceeding specifically goes toward the inventory of assets in Brazil and will not reach any assets located abroad.  (Nery Dec. at 22-24.)  The applicants respond with declarations from their own experts in the laws of Brazil, who assert that Brazilian courts will exercise jurisdiction over foreign assets as part of their allocation of estate assets located in Brazil.  (Third Fraga Dec. ¶ 4 (Docket # 63); Hironaka & Monaco Dec. ¶¶ 30-31 (Docket # 64).)

The Gertrudes Group's argument that the application does not seek materials "for use" in a foreign proceeding essentially addresses whether the materials sought are relevant or admissible in the Brazilian court presiding over the Ação.  But those considerations are beyond the scope of a court's determination whether the materials sought are "for use."  See Brandi-Dohrn, 673 F.3d at 82 ("there is no statutory basis for any admissibility requirement.").  "[T]he ultimate admissibility of the evidence is determined by the foreign tribunal," which "is free to

exclude the evidence or place conditions on its admission." Id.  "[R]equiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'" Id. (quoting Intel, 542 U.S. at 263).  Here, there is no dispute that applicants Sylvia and Eliane are the plaintiffs in the Ação, and that the application in this case involves assets that are disputed in the Ação.  As such, the applicants have the practical ability to place a beneficial document before the foreign tribunal, which has the authority to determine whether the document is admissible.

The Court therefore concludes that the applicants have demonstrated that the material they seek is "for use" in a foreign proceeding, and that their application satisfies this mandatory factor.

> V.   The Discretionary Intel Factors Weigh in Favor of the Application, but the Document Demands Are Overbroad and Unduly Burdensome.

>> A.   The First and Second *Intel* Factors Weigh in Favor of the Application.

As discussed, if an applicant has satisfied the mandatory statutory factors of section 1782, the Court then considers the four discretionary factors set forth in Intel, 542 U.S. at 264-65.  "The Intel factors are not to be applied mechanically.  A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 245 (2d Cir. 2018).  "While district courts have broad discretion to grant or deny § 1782 applications, that discretion is not a license to engage in a free-ranging policy analysis of any given application . . . ." Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 155 (2d Cir. 2022).

The Gertrudes Group concedes that the first and second Intel factors weigh in favor of the applicants.  On the first Intel factor, none of the entities from whom discovery is

sought is a party to the Ação, and on the second <u>Intel</u> factor, there is no dispute that the courts of Brazil are receptive to the assistance of the United States courts.  (<u>See</u> Gertrudes Grp. Mem. at 21-22.)  These factors weigh in favor of the application.

> B.     The Third <u>*Intel*</u> Factor Weighs in Favor of the Application.

On the third <u>Intel</u> factor, the Gertrudes Group asserts that the applicants have shown a "lack of candor" that should be fatal to their application.  The third factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  <u>Intel</u>, 542 U.S. at 244-45. "In the context of § 1782 and the third <u>Intel</u> factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are <u>intended</u> to restrict certain means of gathering or using evidence."  <u>Fed. Republic of Nigeria</u>, 27 F.4th at 153 (emphasis in original). For example, this factor will weigh against an applicant who attempts to gather evidence in the United States "that it would not be able to obtain under the more restrictive [foreign] discovery rules."  <u>Id.</u>  Such foreign proof-gathering restrictions "'are best understood as rules akin to privileges that <u>prohibit</u> the acquisition or use of certain materials, rather than as rules that fail to <u>facilitate</u> investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.'"  <u>Id.</u> (quoting <u>Mees</u>, 793 F.3d at 303 n. 20).

The Gertrudes Group asserts that the applicants failed to fully disclose that they previously made unsuccessful discovery applications in Brazil.  They urge that this "lack of candor" is an "elephant in the room" and "circumvention on steroids" that should be "fatal" to the application.  (Gertrudes Grp. Mem. at 21-23.)

The Gertrudes Group points to the unsuccessful discovery applications brought by Sylvia and Eliane in the two proceedings they commenced to pierce the corporate veils of the

Brazilian entities that they claim conceal estate assets.  (See Cigagna Dec. Exs. D, E.)  The same judge presided over the two proceedings and used identical language to describe the discovery requests, calling them "unnecessary for the adjudication of the suit . . . ."  (Cigagna Dec Ex. D at 4-5 & Ex. E at 2-3.)  The court in Brazil later observed, "They intended to produce evidence that was too broad, based on mere assumptions, without presenting any evidence capable of giving rise to a directed discovery proceeding likely to contribute effectively to resolving the issues presented."  (Id.)  As of May 2021, appeals of both decisions were pending.  (Cigagna Dec. ¶¶ 18, 26.)

        Separately, Sylvia and Eliane also made applications for document production in the Ação, which the Brazilian court denied.  (Cigagna Dec. Ex. F.)  The court denied their emergency request for letters to the Federal Revenue Service of Brazil, the Central Bank of Uruguay, the Central Bank of Brazil and the Real Estate Registry Offices.  (Id. at 3.)  It explained that the requests for documentary evidence "do not present an urgency" as required under Brazil's civil procedure code.  (Id. at 4.)  The emergency request going toward potential veil piercing raised the "possible invasion of [the companies'] banking, tax and property secrecy rights" that were "still subject to controversy . . . ."  (Id.)  "It is also worth noting that some of what is requested involves assets located in other countries, which requires an even more rigorous analysis of relevance, since it implicates the sovereignty of different States."  (Id. at 4.)

        The Gertrudes Group points to district court decisions that have criticized section 1782 applicants for failing to fully disclose the procedural history of the underlying foreign litigation.  In In re WinNet R CJSC, 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017), Judge Cote granted a motion to quash a subpoena issued under section 1782 because the discovery application was "an attempt to circumvent the rulings in the [underlying case] by gathering

evidence on an issue that has already been decided on the merits."  She then observed that the applicants' failure to describe the parties' foreign litigation history was done in bad faith and reflected a lack of candor, which separately weighed against the application.  Id. at *9; see also In re Government of the Lao People's Democratic Republic, 2017 WL 2838051, at *5 (D. Idaho June 30, 2017) (if an applicant "strategically" fails to disclose other, related proceedings, "the court should consider such strategic decisions in the discretionary assessment under the Intel factors.").

But in WinNet, the applicants falsely represented the existence of underlying proceedings where the discovery sought could be put to use, when, in fact, no such proceedings were then underway.  Here, there is no dispute that the Ação is an ongoing case or controversy. The applicants' failure to fully catalog their various, historical claims over Emanuel's estate is a far cry from falsely claiming that discovery will be used in a proceeding that, in truth, has already been fully adjudicated on the merits.  The Gertrudes Group also does not suggest that the denial of discovery applications in Brazil has a preclusive effect on the application here.  Indeed, the court in the Ação expressly recognized that Sylvia and Eliane sought information about assets located in other countries, which implicated sovereignty concerns.  (Cigagna Dec. Ex. F at 4.)  This observation from the Brazilian court suggests that, rather than circumventing any discovery restrictions in Brazil, the section 1782 application is fully consistent with the Brazilian court's expectation that foreign discovery would be a part of the case.

The Court therefore concludes that the third Intel factor weighs in favor of the application.

C.      On the Fourth *Intel* Factor, the Applicants Will Be Granted Leave
        to Submit Proposed Revisions to Their Overbroad and Unduly
        <u>Burdensome Document Demands.</u>

"[A] district court evaluating a § 1782 discovery request should assess whether

the discovery sought is overbroad or unduly burdensome by applying the familiar standards of

Rule 26 of the Federal Rules of Civil Procedure."  <u>Mees</u>, 793 F.3d at 302.  Rule 26(b)(1)

provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case . . . ."  "[T]o the extent a

district court finds that a discovery request is overbroad, before denying the application it should

ordinarily consider whether that defect could be cured through a limited grant of

discovery."  <u>Mees</u>, 793 F.3d at 302.

The Gertrudes Group does not explain in any detail why the discovery sought is

overbroad or unduly intrusive, and points only to the undersigned's Opinion and Order in <u>Ex</u>

<u>parte Abdalla</u>, 2021 WL 168469 (S.D.N.Y. Jan. 19, 2021), which concluded that requests for

records of 93 entities over a 23-year period were unduly intrusive and overbroad.

The reasons for the discovery sought is mostly clearly explained in the

Supplemental Fraga Declaration.  (Docket # 22.)  As noted, Fraga is the Brazil-based counsel to

Sylvia and Eliane.  (Fraga Supp. Dec. ¶ 1.)  Fraga states that the application seeks discovery

going toward proof of the following:

- Whether Emanuel and Gertrudes became the final, beneficial owners of entities
  that, for the sake of brevity, the Court will refer to as Zidane, Dorkaeffe, and
  Menirol, and whether those entities contain assets that should be considered part of
  Emanuel's estate.  (Fraga Supp. Dec. ¶ 6.)
- Whether the entities Zidane, Dorkaeff, Menirol, Inversora Cadell and Sestini, or
  other intermediaries, have transferred estate assets to foreign bank accounts.  (Fraga
  Supp. Dec. ¶ 9.)
- Whether a wire transfer of $1 million from Alexandre to a Bank Leumi account of
  Rosh Holdings Ltd. can be traced to Emanuel's estate.  (Fraga Supp. Dec. ¶ 12.)

- Whether a wire transfer of $200,000 from Vivian and her spouse to Griffiths Ltd. made through Morgan Stanley and Citibank can be traced to Emanuel's estate. (Fraga Supp. Dec. ¶ 12.)
- Whether a wire transfer of approximately $215,000 from MDK Ltd. Partnership for the benefit of Vivian's son can be traced to the estate.  (Fraga Supp. Dec. ¶ 12.)
- Unspecified "suspicious transactions" initiated or received by the 22 persons and entities identified in the document requests that involved accounts at Morgan Stanley, Citibank and Bank Leumi.  (Fraga Supp. Dec. ¶ 13.)  Whether those "suspicious transactions" include all 858 international wire transfers referenced elsewhere in the declaration (Fraga Supp. Dec. ¶ 10) is unclear.
- Information from CHIPS and the Fed-NY that might "complement" existing information about transfers from Deborah to Alexandre that identified Alexandre by a purported Hebrew alias, and account information that exists under that same alias.  (Fraga Supp. Dec. ¶¶ 14-15.)

The document demands go well beyond these topics.  They would sweep private personal information with no apparent nexus to these subjects, including "all" documents and communications related to "any" payment, transfer or investment made to or from these entities and individuals, along with "beneficiary information," "customer reports," tax returns, "personal identification" submitted in connection with account openings, property deeds, insurance policies, addresses, and "particulars of any funds" held on behalf of the individuals and entities at that financial institution.  (See, e.g., Docket # 65-5.)  The applicants have not explained how such requests are "proportional to the needs of the case," as Rule 26 requires.  See Mees, 793 F.3d at 302 (Rule 26 guides the application of the fourth Intel factor).  The breadth of these demands is unduly intrusive and appears designed to harass the persons and entities covered by the demands.

Within fourteen days, the applicants may submit revised, proposed document demands that are more narrowly tailored to the above-discussed subject matters described in the Fraga Declaration.  The Gertrudes Group may respond within seven days thereafter.  The parties are cautioned that the submissions are not an opportunity to supplement the record or re-litigate

any issue decided in this Opinion and Order, and must be focused exclusively on conforming the

proposed document demands to the contents of the Fraga Declaration.

CONCLUSION.

   For the reasons explained, the motion to intervene is GRANTED.  The motion to

quash is GRANTED as to respondents Schwab, Raymond James and Sun Life.  The motion to

quash is otherwise DENIED, except that within fourteen days, the applicants shall submit

revised, proposed document demands as set forth above.  The members of the Gertrudes Group

may submit a written response addressing the proposed demands within seven days thereafter.

   The Clerk is directed to terminate the motion.  (Docket # 52.)

   SO ORDERED.

           P. Kevin Castel
          United States District Judge

Dated: New York, New York
   May 18, 2022