```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                                        20-mc-203 (PKC)
IN RE EX PARTE APPLICATION OF SYLVIA
BENEDEK KLEIN AND ELIANE BENEDEK                                        OPINION AND ORDER
SEGAL
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

    This Court previously granted in part and denied in part a motion to quash or vacate certain subpoenas in aid of foreign proceedings that the Court authorized under 28 U.S.C. § 1782. See In re Klein, 2022 WL 1567584 (S.D.N.Y. May 18, 2022). In applying the discretionary factors of Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), the Court concluded that the applicants' document requests were overbroad and unduly burdensome, and "appear[ed] designed to harass the persons and entities covered by the demands." In re Klein, 2022 WL 1567584, at *9-10. Rather than deny the application, the Court directed the applicants to submit revised, proposed requests that were tailored to transactions identified by the applicants' Brazil-based counsel as relevant to the underlying proceedings. Id. (citing Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015) ("[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery.")).

    As discussed in the prior Opinion and Order, the underlying proceedings in Brazil relate to a long-running, intra-family dispute about which assets should properly be included in the estate of the late Emanuel Benedek. In re Klein, 2022 WL 1567584, at *1-2. Applicants Sylvia Benedek Klein and Eliane Benedek Segal are two of Emanuel's daughters, and participants in the Brazilian probate proceeding that is making an inventory of Emanuel's estate assets. Id. at *2. They seek documents from United States financial institutions that relate to the

transactions of persons and entities who, they assert, may have unlawfully diverted or dissipated assets that should be included in the estate. Id. at *2. They include financial records relating to their mother, Gerturdes, as well as three of Gertrudes's adult children: Alexandre, Vivian and Evelyn (collectively, the "Gertrudes Group"). Id. a *1. Each member of the Gertrudes Group has appeared in this action and opposes the section 1782 application.

"[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 302. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Rule 26(b)(1). Among other things, the Court should consider the importance of the issues at stake in the proceeding and whether the burden or expense of the discovery outweighs its likely benefit. Id. Relevance is construed broadly, but Rule 26 "is also designed to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Malanga v. NYU Langone Med. Ctr., 2016 WL 7477561, at *2 (S.D.N.Y. Dec. 29, 2016) (Pauley, J.) (quotation marks omitted). The party seeking discovery must demonstrate relevance, but on a motion to quash, the burden falls on the movant. Id. at *1.

The applicants' revised, proposed subpoenas include document requests that seek documents from CHIPS, the New York Fed, Morgan Stanley, Citibank and Bank Leumi. (Docket # 77.) The Gertrudes Group has submitted a letter-brief urging that the subpoenas and the newly revised requests be quashed or modified. (Docket # 80.) The applicants have not filed a reply.

In applying the fourth Intel factor and Rule 26, the Court rules as follows:

<u>Requests for information on transactions made using the purported aliases of Alexandre Roberto Benedek (Docket # 77 Exs. A, B).</u>  The applicants' proposed subpoenas to CHIPS and the New York Fed contain near-identical wording and seek documents related to Alexandre Benedek, Deborah Benedek and Rosh Holdings Ltd.  These requests specifically relate to transfers in which Alexandre used the purported aliases Alexandre R. Nobre, Alexandre Nobre, Moshe Menachem Benedek, Menachem Benedek or Moshe Benedek.

The respondents urge that the requests should be modified because Alexandre does not use certain of these aliases and that the wording of the document request is needlessly complex, but they do not otherwise dispute that the materials sought have been identified by the applicants' Brazil counsel as potentially relevant to the underlying proceedings.

Because the requests are tailored to potentially relevant transactions, the respondents' motion to modify or quash the subpoenas will be denied.  (Docket # 77 Exs. A, B)

<u>Requests to Bank Leumi related to Rosh Holdings.  (Docket # 77, Ex. E, Req. 2 & 3.)</u>  The respondents urge that two proposed document requests to Bank Leumi regarding Rosh Holdings seek irrelevant information and should be quashed.  The second request to Bank Leumi seeks documents from October 2012 through July 2014 regarding transactions "from, on behalf of, or at the request of Alexandre to – or for the benefit of – Rosh Holdings . . . ."  The third request seeks any documents from April 2014 through October 2015 relating to transactions to or from Rosh Holdings.  The applicants' Brazilian counsel has identified as potentially relevant a wire transfer of approximately $1,000,000 from Alexandre to Rosh Holdings, received by an account registered to Bank Leumi.  (Fraga Supp. Dec. ¶ 12.)

The respondents assert that these requests do not shed light on whether the transfer can be traced to assets in Emanuel's estate and merely go toward the undisputed

existence of the transfer. The respondents acknowledge that Rosh is "an investment vehicle owned by Alexandre." (Docket # 80 at 3.)

These requests are specifically tailored to the transactions of Rosh Holdings during a relatively limited period of time, and appear to have potential relevance to the applicants' theory that Alexandre diverted estate assets. The motion to quash will be denied as to these requests. (Docket # 77, Ex. E, Req. 2 & 3.)

Requests to Morgan Stanley and Citibank Related to Griffiths Ltd. ("Griffiths") (Docket # 77, Exs. C, D, Req. 2). The proposed document requests to Morgan Stanley and Citibank seek documents from March 2018 through March 2019 relating to payments or transactions to or from Griffiths that were made at the instruction of Vivian Benedek or her spouse Ezra Moas. The applicants' Brazilian counsel has identified a $200,000 wire transfer from Vivian and Ezra to Griffiths as a potentially relevant transaction. (Fraga Supp. Dec. ¶ 12.)

The respondents note that there is a record of a $200,000 wire transfer made from Griffiths as the originator to Vivian and Ezra as the beneficiaries, with Citibank acting as the sending bank on behalf of Morgan Stanley, but no record of a transaction made from Vivian and Ezra to Griffiths. Respondents urge that the request to Citibank should be quashed because Morgan Stanley was the only participant in the transaction to maintain an account at Citibank, and that the request to Morgan Stanley should be modified in order to seek only information on payments to Vivian from Griffiths.

As with the Rosh Holdings requests, these requests are relatively narrow in subject matter and temporal scope, and the applicants have adequately explained why the requests are potentially relevant to the theory that Vivian and Ezra diverted estate assets. The

motion to modify or quash the subpoena will be denied as to the document requests related to Griffiths. (Docket # 77, Exs. C, D, Req. 2).

<u>The request for documents related to MDK Limited Partnership ("MDK").</u> Applicants' proposed subpoena to Citibank includes a request for certain information about payments to or from MDK. (Docket # 77, Ex. D, Req. 3.) Respondents assert in their response that MDK "has nothing to do with these parties," that applicants' counsel now agrees that prior assertions about MDK's role are erroneous, and that the applicants have agreed not to enforce any subpoena against MDK. (Docket # 80 at 2.) The applicants have not disputed these statements.

The motion to quash will be granted as to the applicants' proposed document request related to MDK. (Docket # 77, Ex. D, Req. 3.)

<u>Request No. 1 of the applicants' document requests to Morgan Stanley, Citibank and Bank Leumi. (Docket # 77, Exs. C, D, E, Req. 1.)</u> The applicants seek "[d]ocuments relating to any payment, transaction, transfer, investment, conveyance, wire, debit, credit, monthly account statement, ultimate beneficial ownership ('UBO'), account opening information, or payment messages and/or payment orders to, from, for the benefit of, on behalf of, or at the request of" six business entities purportedly controlled by members of the Gertrudes Group, as well as ten individuals who are either members of the Benedek family or described as "intermediaries" of the business entities.

The six entities subject to this request – Zidane, Dorkaeff, Menirol, Inversora Cadell, Sestini and Timao – are purportedly controlled by members of the Benedek family. The applicants' Brazilian counsel has stated that the applicants seek discovery into whether these entities have transferred assets belonging to Emanuel's estate into foreign bank accounts. (Supp.

Fraga Dec. ¶ 9.)  The applicants have adequately explained the relevance of records of transactions for the entities Zidane, Dorkaeff, Menirol, Inversora Cadell, Sestini and Timao. (Supp. Fraga Dec. ¶¶ 6, 9; Docket # 77 at 2.)  The applicants' Brazilian counsel seeks evidence that Emanuel and/or Gertrudes became beneficial owners of these entities, that the entities hold assets owned by Emanuel and/or Gertrudes, and that following Emanuel's death, the entities have been used to evade Brazil's inheritance laws.  (Supp. Fraga Dec. ¶ 6.)  Documents related to transactions made to or from these entities may be relevant evidence in the Brazilian proceedings "that assets from Emanuel's estate were not declared in Brazil and were diverted from Emanuel's estate."  (Docket # 77 at 2.)  To the extent that these transactions involve members of the Gertrudes Group or other individuals, such transactions would be potentially relevant to the Brazil proceedings.

        The applicants have not, however, made an adequate showing that supports the breadth of the requests directed toward the individuals.  In addition to seeking financial records for the individuals in the Gertrudes Group, all of whom have appeared in this proceeding, the applicants seek the financial records of other natural persons including Adolpho Dimantas, who is described as a "business lawyer" "who was very close to Emanuel" (Fraga Dec. ¶ 11); Mauricio Grabarz, who is identified as a shareholder of Zidane and the son-in-law of Vivian (id. ¶ 16); Ezra Moas, who is identified as a manager of Zidane, an agent of Menirol, and Vivian's spouse (id. ¶¶ 16, 17); Jehuda Edward Steinwurz, who is identified as a manager of Zidane and non-party Suzana Benedek's common-law spouse (id. ¶ 16); and Daniel Moas, who is said to "hold a compensated position at Zidane" and is the son of Vivian (id.).  These individuals are apparently included based on their status as purported "intermediaries" of the entities.  (Docket # 77 at 2.)

The proposed requests appear to cover a sweeping array of financial transactions over a period of more than seven years. The applicants' showing in support of such broad requests is premised on speculation and surmise and is not tailored to the use of entities controlled by the Benedek family to purportedly divert estate assets. Applicants' Brazil-based counsel asserts that Emanuel, Gertrudes and/or Alexandre "may have" transferred money through companies that they controlled or through other intermediaries. (Fraga Dec. ¶¶ 42-43.) He also asserts that discovery obtained from CHIPS and the New York Fed indicates that members of the Benedek family and "other persons relevant to the Brazilian Proceeding" have made 858 international wire transfers denominated in U.S. dollars. (Fraga Supp. Dec. ¶¶ 10, 12.) He points to certain activities of Alexandre and Gertrudes, including Alexandre's involvement in the management of assets at Zidane, Dorkaeff and Menirol; his retention of a real estate assessor to determine the value of Zidane's real property in Brazil; his refusal to share the assessor's valuation with applicant Sylvia Benedek; and Gertrudes's relocation from Brazil to Israel. (Fraga Dec. ¶¶ 34-36.)

A declaration submitted by Bryan Klein, the son of applicant Sylvia Benedek, recounts a conversation that he had with Alexandre in which Alexandre purportedly explained that, "[t]heoretically," Gertrudes could sell her assets to Zidane, and that Zidane could then "send[] them out and it's over." (Klein Dec. ¶¶ 6-7, 11 (Docket # 21).) Klein states that he understood Alexandre to be saying that Zidane could transfer assets to Menirol, a Uruguay entity that is beyond the reach of Brazil's laws. (Id. ¶¶ 12-13.)

"While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses."

Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (Koeltl, J.). The applicants' proposed document requests are overbroad as to the individuals. They seek extensive and intrusive discovery from many individuals whose connection to the Brazilian proceedings is unclear or tangential, labeling them as "intermediaries" of entities owned or controlled by members of the Benedek family. Even for members of the Gertrudes Group, the applicants' showing in support of their requests does not account for their breadth. That Gertrudes relocated from Brazil to Israel and that Alexandre directed an assessment of Zidane's real property holdings does not demonstrate the relevance of obtaining exhaustive financial records over a seven-year period. Similarly, the proposed requests are not tailored to the declaration of Bryan Klein or his interpretation of Alexandre's discussion of Gertrudes and Zidane.

Accordingly, Request 1 of the subpoenas to Morgan Stanley, Citibank and Bank Leumi will be modified. Applicants may obtain the documents sought in Request 1 only insofar as they relate to Zidane, Dorkaeff, Menirol, Inversora Cadell, Sestini and Timao. (Docket # 77, Exs. C, D, E, Req. 1.)

The status of proceedings in Brazil. In a letter of July 19, 2022, counsel to the respondents advised the Court that the Ação de Sonegados proceeding commenced in Brazil by the applicants has been dismissed, and stated that respondents intend to move for dismissal of this proceeding once a certified translation of the Brazilian court's decision was available. (Docket # 81.) Respondents have made no further filings related to the status of the Brazil proceedings, and, as the applicants note, the inventory proceeding in the Brazilian probate court remains ongoing. (Docket # 82.) At this time, the Court has no occasion to revisit its prior conclusion that the discovery sought is "for use" in a foreign proceeding, as required by the text of section 1782(a).

CONCLUSION.

      For the reasons set forth in this Order and the Opinion and Order of May 18, 2022 (Docket # 76), the motion to quash or modify the subpoenas is GRANTED IN PART and DENIED IN PART.  The Clerk is respectfully directed to close the case.

      SO ORDERED.

                                                           *P. Kevin Castel*
                                                           P. Kevin Castel
                                                          United States District Judge

Dated: New York, New York
       October 26, 2022